07-0434-ag
Rainey v. US Department of Labor

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: December 19, 2007                    Decided: February 28, 2008)

Docket No. 07-0434-ag

_____

LORRAINE G. RAINEY, Executor of the Estate of Leo T. Rainey,

*Petitioner*,

—v.—

DIRECTOR, OFFICE OF WORKERS' COMPENSATION, U.S. DEPARTMENT OF LABOR, and ELECTRIC
BOAT CORPORATION,

*Respondents*.

_____

B e f o r e: CALABRESI, KATZMANN, and RAGGI, *Circuit Judges*.

_____

Petition for review of a decision and order of the Benefits Review Board (BRB)
affirming the decision and order of the administrative law judge (ALJ), dismissing the
petitioner's claim for permanent partial disability benefits under the Longshore and Harbor
Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 *et seq*. The ALJ found that petitioner
had successfully invoked the presumption that Leo T. Rainey's lung cancer was a recoverable
injury under the LHWCA, 33 U.S.C. § 920(a), but that the employer had introduced substantial
evidence to rebut the presumption and that, in the absence of the presumption, petitioner had
failed to establish that the lung cancer arose "out of and in the course of employment." 33
U.S.C. § 902(2). The BRB affirmed the decision of the ALJ. We **GRANT** the petition,
**REVERSE** the decision of the BRB, and **REMAND** the case to the BRB for a determination of
benefits.

_____

FOR PETITIONER:          CAROLYN P. KELLY (Amy M. Stone, *of counsel*), O'Brien, Shafner, Stuart, Kelly & Morris, P.C., Groton, CT

FOR RESPONDENTS:         KEVIN C. GLAVIN, Cutcliffe Glavin & Archetto, Providence, RI (on behalf of Electric Boat Corporation)

                         Kathleen Kim, Division of Black Lung and Longshore Legal Services, Office of the Solicitor, U.S. Department of Labor, Washington, DC

_____

KATZMANN, Circuit Judge:

The Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 *et seq.*, creates a presumption of causation: covered workers who suffer a harm that workplace conditions could have caused, aggravated, or accelerated benefit from § 920(a), which presumes, in the absence of substantial evidence to the contrary, that their claims for compensation fall within the regulatory scheme created by the LHWCA. 33 U.S.C. § 920(a). This case calls on us to address the nature of the evidence that an employer must introduce in order to rebut this presumption. We hold that where an ALJ finds that a medical opinion offered by an employer derives from a false factual premise and depends on discredited medical theories, it follows that the opinion cannot as a matter of law provide substantial evidence to rebut the § 920(a) presumption.

## BACKGROUND

Leo T. Rainey worked on submarines as a welder for the Electric Boat Corporation from 1958 to 1967 and then again from 1972 to 1980. In 1980, Electric Boat transferred Rainey from the welding department to the tool crib, where he worked until he retired in 1995. Rainey's tenure at Electric Boat exposed him to asbestos. At times, the welders were required to weld overhead, and they used asbestos blankets to protect themselves from the sparks. In addition, Rainey often worked alongside laggers while they installed asbestos covering to insulate pipes or

-2-

removed old asbestos covering from pipes.  Rainey also smoked tobacco from an early age until 1986.

Doctors diagnosed Rainey with lung cancer in March 2002.  At that time, Rainey, then 73 years old, had a number of other health problems, including chronic obstructive pulmonary disease.

Rainey submitted a claim for permanent partial disability benefits based on his lung cancer pursuant to the LHWCA, 33 U.S.C. § 908(c)(23).  Following an informal conference before the District Director of the Department of Labor's Office of Workers' Compensation Programs, Rainey's claim was referred to an administrative law judge (ALJ), Colleen A. Geraghty, for a formal hearing.  The hearing commenced on December 9, 2003, but was continued until July 28, 2004 for additional discovery.  Prior to the ALJ's decision in this case, Mr. Rainey died on January 21, 2005.  On January 23, 2006, the ALJ released her decision and order denying benefits.

As the executor of his estate, Rainey's widow appealed the decision to the Benefits Review Board (BRB).  The BRB affirmed in an unpublished order dated December 15, 2006, and this petition followed.

**DISCUSSION**

Our review is limited to whether the BRB made any errors of law and whether substantial evidence supports the ALJ's findings of fact.  *Barscz v. Director, Office of Workers' Comp. Programs*, 486 F.3d 744, 749 (2d Cir. 2007).  Pursuant to the "substantial evidence" standard, "[i]f the decision of the ALJ is supported by substantial evidence, is not irrational, and is in accordance with the law, the decision must be affirmed."  *Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1040 (2d Cir. 1997).  In considering the substantiality of the evidence, we must canvass "the whole record," taking into account

"whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474, 488 (1951).

To recover under the LHWCA, Rainey's estate must demonstrate causation--*i.e.*, that Rainey's lung cancer arose out of his employment at Electric Boat. 33 U.S.C. § 902(2). Section 920(a) of the codified Act creates a presumption that a claim for compensation comes within the provisions of the Act, and "inherent in this provision is the presumption that an injury is causally related to a worker's employment." *Port Cooper/T. Smith Stevedoring Co., Inc. v. Hunter*, 227 F.3d 285, 287 (5th Cir. 2000). To invoke this presumption, the estate must make out a *prima facie* case of causation by establishing both that Rainey "suffered harm, and that workplace conditions . . . could have caused, aggravated, or accelerated the harm." *Am. Stevedoring Ltd. v. Marinelli*, 248 F.3d 54, 64-65 (2d Cir. 2001). Once a claimant makes this *prima facie* showing, "the burden shifts to the employer to rebut the presumption with substantial evidence that the alleged harmful workplace condition did not cause, contribute to, or aggravate the claimant's condition." *Id.* at 65. If the employer offers evidence sufficient to rebut the presumption, then it disappears from the case; "all relevant evidence must be weighed to determine if a causal relationship has been established, with [the] claimant bearing the ultimate burden of persuasion." *Id.*

What complicates Rainey's case is not just that he had a significantly increased risk of lung cancer--even without asbestos exposure--due to his smoking history,[1] but also that he never developed symptoms of asbestosis. There exists some disagreement in the medical community concerning whether asbestos-attributed lung cancers are always associated with asbestos-induced

---

[1] Even Rainey's own expert, Dr. Martin Cherniack, concluded that "Mr. Rainey's greatest risk for developing lung cancer came from his history of tobacco use." Dr. Cherniack estimated that Rainey's risk of developing lung cancer at age 75 was approximately 10 times greater due to his smoking history alone, and approximately 2.8 times greater due to his asbestos exposure alone.

lung fibrosis (known as asbestosis). Some, but not all, doctors believe that asbestos cannot cause lung cancer in the absence of asbestosis. Not surprisingly, Rainey and Electric Boat chose experts on opposing sides of this debate. Rainey presented a report and testimony from Dr. Martin Cherniack who asserted that the "general view" is that "asbestos is a carcinogen that directly induces lung cancer. The presence of fibrosis . . . is a marker of heavy exposure rather than an independent risk." In contrast, Electric Boat's expert, Dr. Milo Pulde, wrote in his expert report that the "preponderance of evidence supports the conclusions that in order for asbestos exposure to be considered contributory to the development of tobacco-related lung cancer asbestosis (fibrosis of the lung) must be present clinically or histologically." (Electric Boat also submitted a report from Dr. Michael B. Teiger, who personally examined Rainey; Dr. Teiger did not directly discuss the role of asbestosis in asbestos-related lung cancer.)

In her thorough and thoughtful opinion, the ALJ determined that Rainey had established a *prima facie* case of causation. The ALJ also found, however, that Electric Boat had succeeded in rebutting the § 920(a) presumption based on the reports of Dr. Teiger and Dr. Pulde:

> Doctors Teiger and Pulde have stated unequivocally and to a reasonable degree of medical certainty that the Claimant's lung cancer is not related to exposure to asbestos at the Electric Boat shipyard, but rather is the result of many years of tobacco use. Therefore, the Employer has rebutted the presumption of causation.

In the absence of the presumption, the ALJ ruled, Rainey and his estate had failed to meet their burden of persuasion. As a matter of law, we must reject this conclusion because, when considered in light of the record as a whole and specifically in light of the ALJ's own factual findings as to the unreliability of key aspects of the Pulde report, the two medical opinions cited by the ALJ did not constitute substantial evidence rebutting the § 920(a) presumption.

Addressing first the Teiger report, we note that it never endorsed the view forwarded by Dr. Pulde concerning asbestosis and asbestos-related lung cancer. If anything, Dr. Teiger's report supported the positions put forth by Rainey's expert, Dr. Cherniack. Dr. Teiger praised

the Cherniack report and its analysis of the issues associated with causation and stated, "I would have difficulty in challenging any of [Dr. Cherniack's] conclusions and his excellent and well referenced discussion points out the extreme difficulty physicians have in coming to firm conclusions regarding cause and effect in asbestos cases."

With respect to the role that asbestos played in Mr. Rainey's lung cancer, the strongest statement in Dr. Teiger's report regarding the cause of Rainey's cancer is: "it is my opinion that given his heavy tobacco usage over the years, it is more likely than not that he would have developed his lung cancer *even if* he had never worked at Electric Boat or never been exposed to any asbestos in the work place at all." This does not amount to a statement that the lung cancer was "not related" to asbestos exposure. Indeed, "[i]t is well-established under [the LHWCA] that an employment-related injury need not be the primary cause of an employee's total disability in order for a claimant to receive total disability compensation. If a work-related injury aggravates, exacerbates, accelerates, contributes to or combines with a *pre-existing* infirmity, disease or underlying condition, then the entire resulting disability may be a compensable injury under the Act." *Bechtel Assocs., P.C. v. Sweeney*, 834 F.2d 1029, 1034 (D.C. Cir. 1987); *see also Marinette Marine Corp. v. Office of Workers' Comp. Programs*, 431 F.3d 1032, 1035 (7th Cir. 2005) ("[T]he aggravation rule does not require that a later injury fundamentally alter a prior condition. It is enough that it produces or contributes to a worsening of symptoms."); *Bath Iron Works Corp. v. Director, Office of Workers' Comp. Programs*, 137 F.3d 673, 676 (1st Cir. 1998) (Lynch, J., dissenting) ("Under the 'aggravation rule,' even a small contribution by a work-related condition to the claimant's disability is sufficient to trigger full recovery under the LHWCA; primary causation need not be shown."). Thus, Dr. Teiger's opinion concerning the likelihood that Rainey would have developed lung cancer in the absence of asbestos exposure does not foreclose a finding of causation. To the extent that the ALJ and

BRB relied on this statement as evidence to support rebutting the § 920(a) presumption, they erred as a matter of law.

In its opinion, the BRB also quoted a more definitive-sounding statement from the Teiger report: "I believe it is the cigarettes entirely that are responsible for his respiratory condition. In my opinion, I do not consider his reduction in pulmonary function to be related to his occupation in any way." When considered in isolation, this statement would appear to constitute evidence that asbestos exposure did not cause, contribute to, or aggravate Rainey's condition. In context, however, the language refers not to Rainey's lung cancer, but to his chronic obstructive pulmonary disease, a condition not at issue in this case. Because Rainey claimed damages arising from his lung cancer, and not his chronic obstructive pulmonary disease, the statement has no relevance whatsoever to the § 920(a) presumption.

The Pulde report, on the other hand, does offer some evidence disputing the relationship between Rainey's lung cancer and his asbestos exposure:

> Based on a review of the medical records, the literature relating to the pathogenesis of . . . lung cancer, and to a reasonable degree of medical certainty, there is no evidence that Mr. Rainey's employment as a welder from 1958 to 1995 by Electric Boat or workplace exposure from 1958 to 1995 contributed to his tobacco-related lung cancer. . . . Mr. Rainey's lung cancer was a direct and exclusive consequence of his substantial tobacco abuse.

But the ALJ explicitly discounted this aspect of the Pulde report, indicating that she did not consider it reliable. In a footnote, the ALJ rejected the premise of Dr. Pulde's report--that Rainey's asbestos exposure was "indirect and clinically insignificant"--finding that "Dr. Pulde's statements regarding the nature and extent of the Claimant's asbestos exposure are entitled to little weight as they are contrary to the Claimant's credible and unrebutted testimony." Further, the ALJ rejected the reasoning behind Dr. Pulde's opinion:

> Dr. Pulde also advanced a theory that it is not asbestos exposure but rather asbestosis which causes lung scarring and that it is the scarring rather than asbestos that contributes to the development of lung cancer. This theory has been referred to as

-7-

"scar carcinoma." Dr. Cherniack testified persuasively that this theory has been widely discredited in the medical community and is no longer sound.

As the Seventh Circuit has helpfully explained, the employer's burden in rebutting the § 920(a) presumption is a burden of production, not a burden of persuasion. *See Am. Grain Trimmers v. Office of Workers' Comp.*, 181 F.3d 810, 817 (7th Cir. 1999) (en banc); *see also Dir., Office of Workers' Comp. Programs, Dep't. of Labor v. Greenwich Collieries*, 512 U.S. 267 (1994); *Conoco, Inc. v. Dir., Office of Worker's Comp. Programs, U.S. Dep't. of Labor*, 194 F.3d 684, 691 (5th Cir. 1999). Nonetheless, an employer cannot satisfy its burden of production simply by submitting any "evidence" whatsoever. To meet its § 920(a) burden, the employer must introduce "such relevant evidence as a reasonable mind might accept as adequate" to support a finding that workplace conditions did not cause the accident or injury. *Am. Grain Trimmers*, 181 F. 3d at 817 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Bath Iron Works Corp. v. Preston*, 380 F.3d 597, 605 n.2 (1st Cir. 2004). In noting the various inadequacies of the Pulde report, the ALJ made clear her view that a reasonable mind would not accept it as evidence that Rainey's lung cancer did not arise from his asbestos exposure.[2]

Put another way, the ALJ's reliance on the Pulde report--and what she considered the widely discredited science contained therein--ran afoul of the Administrative Procedure Act's requirement that LHWCA orders be supported by "reliable, probative, and substantial evidence."

---

[2] Indeed, when the ALJ herself considered the overall evidence in the record she did not rely on the Pulde report to find for the employer but rather on the fact that she was "troubled by the lack of any objective evidence reflecting a physiologic lung change as a result of the Claimant's exposure to asbestos." The ALJ expressed concern that to accept Dr. Cherniack's report would mean that "cancers appearing in individuals who had experienced twenty-five years or more of asbestos exposure would always be attributed to asbestos exposure even in the absence of objective evidence linking the two. . . ." But this is the very import of the § 920 presumption, which reflects congressional "recognition that claims such as those involved here would be difficult to prove." *Greenwich Collieries*, 512 U.S. at 280.

5 U.S.C. § 556(d).  Because she viewed the science behind the Pulde report as unsound, the ALJ could not rely on it to rebut the § 920(a) presumption.

In sum, neither Dr. Teiger's medical opinion nor Dr. Pulde's expert opinion provides evidence that can support the conclusion that Rainey's exposure to asbestos through his work at Electric Boat did not cause, aggravate, or accelerate his lung cancer.  Accordingly, we conclude that the BRB erred in determining that substantial evidence supported the ALJ's determination that the presumption of causation had been rebutted.

## CONCLUSION

For the reasons set forth above, we REVERSE and REMAND to the Benefits Review Board for a determination of benefits.