ROBINSON, C.J.
**233 In this workers' compensation appeal, we consider whether an employer is collaterally estopped from challenging an employee's eligibility for benefits under the Connecticut Workers' Compensation Act (state act), General Statutes § 31-275 et seq., because of an earlier decision by a United States Department of Labor administrative law judge (administrative law judge) awarding benefits to that employee under the federal Longshore and Harbor Workers' Compensation Act (Longshore Act), 33 U.S.C. § 901 et seq. (2012). The defendant Electric Boat Corporation[1] appeals[2] from the decision of the Compensation Review Board (board), which reversed the decision of the Workers' Compensation Commissioner for the Eighth District (commissioner) dismissing the claims for benefits under the state act filed by the plaintiff, Katherine Filosi, as executor of the estate of the decedent, Donald L. Filosi, Jr., and as the dependent widow of the decedent.[3] On appeal, the defendant claims that the board improperly determined that the administrative law judge's decision **234 to award benefits under the Longshore Act collaterally estopped it from challenging compensability because the federal forum employs a lower standard of causation than the substantial factor standard required by the state act and, therefore, that it should be allowed to litigate its claims under the higher state standard. Guided largely by our decision in Birnie v. Electric Boat Corp. , 288 Conn. 392, 953 A.2d 28 (2008), we conclude that the board properly determined that the defendant is collaterally *38 estopped from relitigating the issue of causation under the state act because the record of the Longshore Act proceedings indicates that the administrative law judge employed the substantial factor standard that governs in the state forum. Accordingly, we affirm the decision of the board.
The record reveals the following undisputed facts and procedural history. The decedent began working at the defendant's Groton shipyard in 1961 and, with some brief exceptions, continued his work there until he retired in 1998. During his employment with the defendant, the decedent was exposed to asbestos. The decedent was also a heavy smoker of cigarettes from the age of fourteen until his death, with some pauses. After he was diagnosed in 2012 with high grade neuroendocrine lung cancer, the decedent filed a notice of claim for compensation with the Workers' Compensation Commission (commission), alleging that he had sustained a lung injury from "exposure to dust and fumes." On December 17, 2012, the decedent died as a result of his lung cancer. The plaintiff, as his widow, subsequently filed a notice of dependent's claim, and the two claims were assigned to the commission's consolidated asbestos litigation docket.
In addition to the claims seeking benefits under the state act, the plaintiff also filed claims seeking benefits **235 under the Longshore Act. While the claims under the state act were pending, the administrative law judge conducted a formal hearing on the Longshore Act claims on August 5, 2013. At the hearing, the plaintiff presented the opinions and testimony of two physicians, Laura Welch and Arthur DeGraff. Welch, who is board certified in internal medicine and occupational medicine, testified that "smoking contributed to [the decedent's] lung cancer, but his asbestos exposure was a substantial contributing cause." DeGraff, who is board certified in internal medicine and pulmonary disease, testified that the decedent's "death from lung cancer is a direct result of his past smoking history combined with past asbestos exposure." On the basis of the documentary evidence presented by the plaintiff, along with a concession by the defendant's medical expert, Milo Pulde, an internist, the administrative law judge found that the plaintiff had established a prima facie case under the Longshore Act's burden shifting framework by showing that the decedent had suffered harm, and that workplace conditions could have caused, aggravated, or accelerated that harm,[4] which then triggered **236 the Longshore Act's § 20 (a) presumption of coverage.[5] See 33 U.S.C. § 920 (a) (2012).[6] *39 The defendant then presented evidence to rebut the § 20 (a) presumption of coverage under the Longshore Act. The administrative law judge found that the defendant successfully rebutted the § 20 (a) presumption by submitting substantial evidence through the opinions and testimony of its medical experts, Pulde and Darryl Carter, a board certified anatomic pathologist, that the workplace did not cause the decedent's injury. Pulde directly contradicted the testimony of the plaintiff's experts, stating: "[T]here is no evidence that [the decedent's] ... occupational employment as a rigger ... **237 or ... occupational asbestos exposure caused or contributed to his tobacco-related lung cancer ...."
Once the defendant introduced evidence to rebut the presumption of coverage under the Longshore Act, the administrative law judge weighed all of the evidence in the record and concluded that the plaintiff had carried her burden of proving by a preponderance of the evidence that the decedent's lung cancer was work-related. In weighing the evidence, the administrative law judge found Welch "to be the most qualified expert" and found DeGraff also to be "reliable"; he did not credit the defendant's expert witnesses. On March 20, 2014, the administrative law judge issued a decision and order finding the decedent's "disability and death, a direct result of his lung cancer, causally linked to his asbestos exposure while employed at [the defendant]," and he awarded the plaintiff benefits under the Longshore Act.
Thereafter, the plaintiff submitted the order of the administrative law judge awarding benefits under the Longshore Act to the commissioner in the pending state workers' compensation proceeding, and contended that the administrative law judge's order collaterally estopped the defendant from litigating the state act claims before the commissioner. On February 13, 2015, the commissioner determined that the defendant was not collaterally estopped from challenging causation because the administrative law judge had neither defined the "requisite causal connection" required to be proved under federal law nor determined that "the [plaintiff] had proved [the decedent's] employment and exposure [to asbestos] to be a significant factor, or substantial contributing factor, *40 in the development of his cancer." Turning to the merits of the claim, the commissioner further concluded that the plaintiff had not proved that the decedent's exposure to asbestos during his employment was a factor in causing his lung **238 cancer or death but, rather, found that his "long-term tobacco abuse was a significant factor in causing his lung cancer" and that the decedent's "smoking history was more than sufficient to fully explain his development of lung cancer." Accordingly, the commissioner dismissed the plaintiff's claims for benefits under the state act.
The plaintiff appealed from the commissioner's dismissal of the state act claims to the board. The board concluded that the decision of the administrative law judge awarding the plaintiff benefits under the Longshore Act "comports with the standard for analysis as set forth in [the] Supreme Court's holding in Lafayette [v. General Dynamics Corp. , 255 Conn. 762, 770 A.2d 1 (2001) ]," and "reflects that the administrative law judge properly adopted the substantial contributing factor standard in reaching his decision ...." The board cited this court's conclusion in Lafayette that the administrative law judge in that case had required the claimant therein to prove "the same burden that would obtain in the state workers' compensation proceeding"; Lafayette v. General Dynamics Corp. , supra, at 781, 770 A.2d 1 ; and deemed Lafayette controlling of the present case because the administrative law judge "essentially followed the same process that a trial commissioner would have to adhere to in order to make a finding of a compensable injury under the [state act]." (Internal quotation marks omitted.) The board stated that, "given that the [administrative law judge] relied on an opinion sufficient to meet the standard of proving causation applicable under [the state act], we need not determine whether the difference in the minimum standards of proof between [the state act] and the federal Longshore Act would preclude the application of the collateral estoppel doctrine." (Internal quotation marks omitted.) The board then distinguished the present case from Birnie v. Electric Boat Corp. , supra, 288 Conn. 392, 953 A.2d 28, **239 observing that, although the administrative law judge in the present case never "articulate[d] the precise level of contribution necessary to satisfy the causation standard," in Birnie , "the [administrative law judge] relied upon medical evidence which found the claimant's workplace exposure to asbestos was merely a contributing factor while the [administrative law judge] in the present matter relied upon medical evidence stating that the workplace exposure to asbestos was a substantial contributing factor." (Emphasis in original; internal quotation marks omitted.) Accordingly, the board reversed the commissioner's decision and thereafter issued a ruling denying a motion by the defendant for reconsideration and a request for reargument. This appeal followed.
On appeal, the defendant claims, inter alia, that the board improperly gave the administrative law judge's decision awarding benefits under the Longshore Act preclusive effect. Specifically, the defendant relies on Birnie v. Electric Boat Corp. , supra, 288 Conn. at 396, 953 A.2d 28, in which we concluded that the doctrine of collateral estoppel did not apply when the administrative law judge did not "articulate clearly the scope of the contributing factor standard he had applied," because the causation standard under the Longshore Act is lower than that of the state act and is satisfied if the plaintiff proves that workplace conditions made "any " contribution to the illness or injury. (Emphasis in original.) In support of this argument, the defendant distinguishes the *41 administrative law judge's "Factual Summary," in which he quotes the "substantial contributing cause" language of the plaintiff's expert, from his "Findings of Fact and Conclusions of Law," which do not specifically apply a substantial factor standard. Observing that the "offensive" use of collateral estoppel is disfavored,[7] the **240 defendant further argues that, even if the administrative law judge had determined that the decedent's exposure to asbestos was a substantial contributing factor, that finding does not have preclusive effect under the doctrine of collateral estoppel because it would not have been a necessary determination to the decision under the Longshore Act, leaving the defendant no reason to litigate that matter in the Longshore Act proceeding.
In response, the plaintiff contends that the board properly applied the doctrine of collateral estoppel because the same claim was at issue in both state and federal forums, namely, whether the decedent's lung cancer arose out of and in the course of his employment. The plaintiff further argues that our decision in Lafayette v. General Dynamics Corp. , supra, 255 Conn. 762, 770 A.2d 1, requires the use of the doctrine of collateral estoppel in the present case because it establishes that the same burden of proof exists for the plaintiff in both state and Longshore Act forums.[8] Additionally, the plaintiff argues that Birnie is controlling with respect to collateral estoppel, because we held in that case that no universal standard of causation applies under the Longshore Act, and we therefore must look to the standard **241 as applied by the administrative law judge in the federal proceeding. Accordingly, the plaintiff contends that the record in the present case demonstrates that the administrative law judge relied on the plaintiff's medical experts and found that the asbestos exposure was a substantial factor contributing to the decedent's lung cancer. We agree with the plaintiff and conclude that the board properly determined that the defendant was collaterally estopped from challenging compensability in the state act proceeding because, in the prior Longshore Act proceeding, the administrative law judge found the asbestos exposure to be a substantial factor contributing to the decedent's lung cancer.
We begin by setting forth the applicable standard of review regarding workers' compensation appeals in Connecticut. "The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they *42 result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them.... Neither the ... board nor this court has the power to retry facts.... Cases that present pure questions of law ... invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion.... We have determined, therefore, that ... deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute ... has not previously been subjected to judicial scrutiny [or to] ... a governmental agency's time-tested interpretation ...." (Citation omitted; internal quotation marks omitted.) Birnie v. Electric Boat Corp. , supra, 288 Conn. at 404, 953 A.2d 28.
Given that this appeal concerns the preclusive effect in state act proceedings of the administrative law **242 judge's decision to award benefits under the Longshore Act, we next review the doctrine of collateral estoppel. "The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality.... Collateral estoppel ... prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim.... For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action . It also must have been actually decided and the decision must have been necessary to the judgment....
"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined.... An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered.... If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta....
"As a general proposition, the governing principle is that administrative adjudications have a preclusive effect when the parties have had an adequate opportunity to litigate.... [A] valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court." (Citations omitted; emphasis in original; internal quotation marks omitted.) Lafayette v. General Dynamics Corp. , supra, 255 Conn. at 772-73, 770 A.2d 1.
"The application of the collateral estoppel doctrine may not be proper when the burden of proof or legal standards differ between the first and subsequent **243 actions. See, e.g., Bath Iron Works Corp. v. Director, Office of Workers' Compensation Programs , 125 F.3d 18, 22 (1st Cir. 1997) ('[c]ertainly a difference in the legal standards pertaining to two proceedings may defeat the use of collateral estoppel ... [b]ut this is so only where the difference undermines the rationale of the doctrine' ...); Newport News Shipbuilding & Dry Dock Co. v. Director, Office of Workers' Compensation Programs , 583 F.2d 1273, 1279 (4th Cir. 1978) ('[r]elitigation of an issue is not precluded by the doctrine of collateral estoppel where the party against whom the doctrine is invoked had a heavier burden of persuasion on that issue in the first action than he does in the second, or where his adversary has a *43 heavier burden in the second action than he did in the first'), cert. denied, 440 U.S. 915, 99 S.Ct. 1232, 59 L.Ed.2d 465 (1979) ; see also Purdy v. Zeldes , 337 F.3d 253, 260 n.7 (2d Cir. 2003) ('Collateral estoppel in this context is a fact intensive inquiry that is best determined on a case-by-case basis. As the [D]istrict [C]ourt stated, the collateral estoppel effect of the prior proceeding may depend on the specific approach taken by the courts addressing the petition in a particular case.' ...)." Birnie v. Electric Boat Corp. , supra, 288 Conn. at 406-407, 953 A.2d 28.
In Birnie , we reviewed the standards of causation under both the Longshore Act and the state act. See id., at 407-15, 953 A.2d 28. "As both statutes are no-fault workers' compensation schemes, the requirement that an injury must arise out of and in the course of employment is necessary to establish a causal connection between the claimant's employment and the resultant injury." Id., at 407, 953 A.2d 28 ; see also Gencarelle v. General Dynamics Corp. , 892 F.2d 173, 176-77 (2d Cir. 1989) (defining occupational disease to require that employee suffer from disease caused by hazardous conditions, which traditionally has included asbestos, that are peculiar to one's employment). "Although both the federal and state statutes **244 require that an injury be causally connected to the employment, the Longshore Act provides no further statutory guidance as to the requisite level of causation needed in order for an injury to be compensable, and the state act mandates only that the injury need be 'causally traceable' to the employment.... Thus, under both the Longshore Act and the state act, administrative law judges and commissioners must apply a standard of causation to identify whether the proffered evidence in each case satisfies the baseline level of causation necessary to render an injury compensable." (Citation omitted; footnote omitted.) Birnie v. Electric Boat Corp. , supra, 288 Conn. at 408-409, 953 A.2d 28.
"For purposes of determining whether an injury is compensable under the state act, our appellate courts have required the commissioners to use a 'substantial factor' causation standard." Id., at 409, 953 A.2d 28. In Birnie , we determined that this standard "requires that the employment, or the risks incidental thereto, contribute to the development of the injury in more than a de minimis way ." (Emphasis in original.) Id., at 412-13, 953 A.2d 28. Subsequently, in Sapko v. State , 305 Conn. 360, 391, 44 A.3d 827 (2012), we clarified that the state substantial factor standard had not been watered down by the "de minimis" language in Birnie : "[I]n Birnie, we undertook an in-depth examination of the contributing and substantial factor standards to facilitate a comparison of the two tests. It was in this context that we observed that the substantial factor test requires that the employment contribute to the injury 'in more than a de minimis way.' ... The 'more than ... de minimis' language is preceded, however, by statements explaining that 'the substantial factor standard is met if the employment materially or essentially contributes to bring about an injury' ... which, by contrast, 'does not connote that the employment must be the major contributing factor in bringing about the injury ... nor that the employment must **245 be the sole contributing factor in development of an injury.' ... Thus, it is evident that we did not intend to lower the threshold beyond that which previously had existed." (Citations omitted; emphasis in original.) See also Voronuk v. Electric Boat Corp. , 118 Conn. App. 248, 255, 982 A.2d 650 (2009) (clarifying substantial factor standard after Birnie ). *44 With respect to whether an injury is compensable under the Longshore Act, we determined in Birnie that "there is no universal causation standard that is applied in every case for compensation under the Longshore Act" because it "may vary depending on, for example, whether the claimant suffers from an injury or from a disease, or the particular circumstances of the claimant's employment." (Footnote omitted.) Birnie v. Electric Boat Corp. , supra, 288 Conn. at 414-15, 953 A.2d 28. Accordingly, in determining whether a decision under the Longshore Act is entitled to preclusive effect in a state act proceeding, the dispositive question is "whether the standard as applied by the federal administrative law judge differs from the substantial factor standard to such an extent that the application of the collateral estoppel doctrine would [undermine] the rationale of the doctrine." (Emphasis in original; internal quotation marks omitted.) Id., at 395, 953 A.2d 28 n.2.
Having examined the record in the present case, we conclude that the finding of compensability in the Longshore Act proceeding has preclusive effect in the proceedings under the state act because the administrative law judge applied a substantial factor standard therein. Although the administrative law judge did not expressly state as a matter of law that he was applying a substantial factor standard of causation, he nevertheless specifically credited the opinion of Welch, the plaintiff's medical expert, who stated in her report that " '[i]t is my opinion with a reasonable degree of medical certainty that the asbestos exposure sustained by [the **246 decedent] in his more than [thirty] years [of] work at the [defendant's] shipyard was a substantial contributing cause to the development of his lung cancer.' " This specific finding renders this case distinguishable from Birnie v. Electric Boat Corp. , supra, 288 Conn. at 397, 953 A.2d 28, in which the administrative law judge credited an expert opinion that stated only that "[the decedent's] exposure to industrial irritants contributed to his obstructive and restrictive lung disease that was a significant factor in limiting his ability to engage in any meaningful exertion which contributed to his deconditioned state and consequently his cardiac problems and ultimate death." (Emphasis added; internal quotation marks omitted.) Further, in Birnie , the administrative law judge "conclude[d] that [the decedent's] exposure to asbestos and other industrial irritants at [the defendant's facilities] were a contributing factor in his myocardial infarction and death." (Emphasis added; internal quotation marks omitted.) Id., at 399, 953 A.2d 28. Given these statements, we concluded in Birnie that the administrative law judge's opinion was unclear with respect to the scope of the contributing factor standard as applied . Thus, we held that, "without a more precise articulation of the contributing factor standard applied by the administrative law judge," we [could] not make assumptions about the scope of the contributing factor standard for purposes of determining whether collateral estoppel was appropriate in the subsequent state proceeding." (Emphasis in original.) Id., at 417, 953 A.2d 28.
In contrast to Birnie , we do not have to make assumptions in the present case. The federal administrative law judge specifically credited an expert's testimony that the asbestos exposure was a "substantial contributing cause," which is the same causation standard required under the state act. There is no ambiguity in the administrative law judge's findings of fact and conclusions of law indicating that he applied a *45 different **247 standard of causation.[9] We conclude, therefore, that the board properly determined that, "given that the [administrative law judge] relied on an opinion sufficient to meet the standard of proving causation applicable under [the state act], [it] need not determine whether the difference in the minimum standards of proof between [the state act] and the federal Longshore Act would preclude the application of the collateral estoppel doctrine."[10] (Internal quotation marks omitted.)
We acknowledge that, in the present case, the administrative law judge's discussion of the governing legal principles did not identify a specific standard of causation that the plaintiff was required to meet under the Longshore Act. Citing **248 Director, Office of Workers' Compensation Programs v. Greenwich Collieries , 512 U.S. 267, 277-80, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994), and Rainey v. Director, Office of Workers' Compensation , 517 F.3d 632, 634 (2d Cir. 2008), the administrative law judge stated that "[t]he claimant bears the ultimate burden of persuasion and can only satisfy this burden if a preponderance of the evidence establishes the requisite causal connection." As we observed in Birnie , the Greenwich Collieries decision "sheds no light on the scope of the standard as applied by the administrative law judge." Birnie v. Electric Boat Corp. , supra, 288 Conn. at 416, 953 A.2d 28. The Rainey decision similarly does not indicate the scope of the causation standard applied, as the United States Court of Appeals for the Second Circuit concluded therein that the defendant had not met its burden of production in rebutting the § 20 (a) presumption of causation. Rainey v. Director, Office of Workers' Compensation , supra, at 637. The Rainey case merely reiterates the general Longshore Act principle that, "[i]f the employer offers evidence sufficient to rebut the presumption, then it disappears from the case; all relevant evidence must be weighed to determine if a causal relationship has been established, with [the] claimant bearing the ultimate burden of persuasion." (Internal quotation marks omitted.) Id., at 634.
We disagree, however, with the defendant's reliance on the discussion of the *46 "aggravation rule" in Rainey in support of its claim that the federal causation standard is lower than the state standard. The Second Circuit in Rainey notes that "[i]t is [well established] under [the Longshore Act] that an employment-related injury need not be the primary cause of an employee's total disability in order for a claimant to receive total disability compensation. If a work-related injury aggravates, exacerbates, accelerates, contributes to or combines with a [preexisting] infirmity, disease or underlying condition, then the entire resulting disability may be a **249 compensable injury under the [Longshore] Act." (Emphasis omitted; internal quotation marks omitted.) Id., at 636. In the present case, the administrative law judge cited to this language in Rainey , stating that "any aggravation or contribution entitles the claimant to benefits." The administrative law judge also cited to Bath Iron Works Corp. v. Fields , 599 F.3d 47, 53 (1st Cir. 2010), which states: "At the first stage, the claimant must make out a prima facie case by showing (1) that he suffered physical harm and (2) that a workplace accident or workplace conditions could have caused, aggravated, or accelerated the harm." We disagree with the defendant's argument that the administrative law judge's citations to these principles means that he believed the causation standard in the federal forum is lower than the substantial factor standard. Rather, we follow our case law that directs us to consider the specific standard as applied by the administrative law judge. Birnie v. Electric Boat Corp. , supra, 288 Conn. at 415, 953 A.2d 28.
To this end, we agree with the plaintiff that the lack of a universal causation standard under the Longshore Act means that, for purposes of collateral estoppel, the standard of causation the administrative law judge applied was in fact a "necessary determination" to the decision under the Longshore Act. First, the lack of a clear standard incentivizes litigation of the causation issue in the federal forum, given the apparent uncertainty as to the causation standard that the administrative law judge will apply therein.[11] See Birnie v. Electric Boat Corp. , supra, 288 Conn. at 399, 953 A.2d 28 (administrative law judge found exposure to be contributing factor). Second, to the extent that the substantial factor standard **250 applied by the administrative law judge may have been erroneous as a matter of federal law under the Longshore Act; see footnote 10 of this opinion; the erroneous application of an even higher standard would not diminish the preclusive effect of that decision in proceedings under the state act. See Reed v. Allen , 286 U.S. 191, 201, 52 S.Ct. 532, 76 L.Ed. 1054 (1932) ("the general and well settled rule [is] that a judgment, not set aside on appeal or otherwise, is equally effective as an estoppel upon the points decided, whether the decision be right or wrong"); Johnson v. Watkins , 101 F.3d 792, 795 (2d Cir. 1996) ("Use of the doctrine [of collateral estoppel] represents an informed choice that the occasional permanent encapsulation of a wrong result is a price worth paying to promote the worthy goals of ending disputes and avoiding repetitive litigation.... Recognizing that the doctrine places termination of litigation ahead of the correct result, the application of collateral estoppel has been narrowly tailored to ensure that it applies only where the circumstances *47 indicate the issue estopped from further consideration was thoroughly explored in the prior proceeding, and that the resulting judgment thus has some indicia of correctness." [Citation omitted.] ).
We further disagree with the defendant's argument that the higher amount of benefits available to claimants in the state forum, resulting in increased liability for a defendant, discourages affording the Longshore Act proceedings preclusive effect. The defendant cites no authority for the proposition that the policies underlying the doctrine of collateral estoppel, namely, the " 'stability of former judgments and finality' "; Lafayette v. General Dynamics Corp. , supra, 255 Conn. at 772, 770 A.2d 1 ; would have no application in the present case, insofar as the issue of causation has been actually litigated and necessarily determined. This is further supported by "the principles underlying Connecticut practice in **251 [workers'] compensation cases: that the legislation is remedial in nature ... and that it should be broadly construed to accomplish its humanitarian purpose." (Citations omitted; internal quotation marks omitted.) Ash v. New Milford , 207 Conn. 665, 672, 541 A.2d 1233 (1988).
Our analysis, therefore, remains one of looking to the standard as applied by the administrative law judge; Birnie v. Electric Boat Corp. , supra, 288 Conn. at 415, 953 A.2d 28 ; and, in the present case, the causation standard applied was the same substantial factor standard that governs proceedings under the state act. Accordingly, the board properly determined that the defendant is collaterally estopped from relitigating the issue of causation before the commissioner with respect to the plaintiff's claims under the state act.
The decision of the Compensation Review Board is affirmed.
In this opinion the other justices concurred.

The sole defendant in the Longshore Act proceeding was Electric Boat Corporation, appearing as the employer and as self-insured. In the present appeals, the defendants include Electric Boat Corporation and its insurers, The Standard Fire Insurance Company c/o Travelers and Insurance Company of North America c/o Chubb Insurance/Esis, Inc. For the sake of simplicity, all references herein to the defendant are to Electric Boat Corporation.

The defendant and its insurers; see footnote 1 of this opinion; filed separate appeals from the decision of the board to the Appellate Court; see General Statutes § 31-301b ; and we transferred the appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. The appeals thereafter were consolidated.

We note that Katherine Filosi has died since the events underlying this appeal took place, and Daniel Filosi, successor executor of the estate of Donald L. Filosi, Jr., and executor of the estate of Katherine Filosi, was substituted as the plaintiff on March 21, 2016. In the interest of simplicity, we refer to Katherine Filosi as the plaintiff.

The administrative law judge observed that there was "no dispute that [the decedent] was exposed to asbestos during the course of his employment" with the defendant, specifically referencing Pulde's concession that it is unknown "whether [the decedent] had the body burden of asbestos, but we can assume he had a significant exposure based on his exposure history ...." The plaintiff agrees that the issue of whether the decedent experienced heavy exposure to asbestos was not contested. At oral argument before this court, the plaintiff stated that she also sought to collaterally estop the defendant from challenging the issue of exposure to asbestos. The defendant, however, counters that the issue is not directly relevant to this appeal. We need not reach this issue because, first, we do not consider claims raised for the first time at oral argument before this court; see, e.g., Giannoni v. Commissioner of Transportation , 322 Conn. 344, 347 n.6, 141 A.3d 784 (2016) ; and, second, as the administrative law judge found there to be no dispute over the issue, citing the concession of Pulde, it appears, in any event, to be subsumed in the broader question of causation.

The following statutory framework governs proof of a claim under the Longshore Act. The plaintiff must establish a prima facie case by showing that he "suffered harm, and that workplace conditions ... could have caused, aggravated, or accelerated the harm." (Internal quotation marks omitted.) Rainey v. Director, Office of Workers' Compensation , 517 F.3d 632, 634 (2d Cir. 2008). "Once a prima facie case has been established for ... death benefits, § 20 (a) of the Longshore Act provides a presumption that the claim is covered by the Longshore Act.... In order for a claimant to establish a prima facie case to invoke the presumption, the claimant must show that he has suffered an injury and that conditions existed in the workplace that could have caused the injury.... If the so-called § 20 (a) presumption of coverage is invoked, the burden of going forward with the evidence shifts to the employer. In order to rebut the § 20 (a) presumption, the employer must introduce substantial evidence that the injury did not arise out of or in the course of employment.... If the employer offers substantial evidence that the injury was not work-related, the presumption falls out of the case entirely ... and the administrative judge must weigh all of the evidence in the record. The administrative judge may then rule in favor of the claimant only if he or she concludes that the claimant has met his or her burden of proving by a preponderance of the evidence that the injury was work-related." (Citations omitted; footnote omitted.) Lafayette v. General Dynamics Corp. , 255 Conn. 762, 774-75, 770 A.2d 1 (2001).

Title 33 of the 2012 edition of the United States Code, § 920, provides in relevant part: "In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary-
"(a) That the claim comes within the provisions of this chapter...."

Our understanding of courts' hesitance to permit the offensive use of collateral estoppel, as opposed to the defensive use, centers on its use offensively by one who was not a party to the previous action. See, e.g., Adamson v. Hill , 202 Kan. 482, 486, 449 P.2d 536 (1969) ("the courts are more inclined to permit use of the doctrine as a 'shield' by one not a party to the first action, but not as a 'sword' "). We conclude that this hesitation is inapplicable in the present case because the plaintiffs in the state act proceeding and the Longshore Act proceeding are the same.

For purposes of clarity, we note that we understand the procedural burdens of proof between the two forums in this case to be equivalent, insofar as they refer to the burden of persuasion. See Director, Office of Workers' Compensation Programs v. Greenwich Collieries , 512 U.S. 267, 272-76, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994). Specifically, once the § 20 (a) presumption dropped after the defendant rebutted the plaintiff's prima facie case in the Longshore Act proceeding, the plaintiff bore the same burden of persuasion to prove causation by a preponderance of the evidence in both forums; where the parties disagree is the level of causation the plaintiff was required to prove in the state and federal forums. See Lafayette v. General Dynamics Corp. , supra, 255 Conn. at 774-75, 770 A.2d 1 ; see also footnote 5 of this opinion.

We acknowledge the defendant's heavy reliance on the administrative law judge's statement that "Welch and ... DeGraff both ascribe [the decedent's] lung cancer, at least in part , to his asbestos exposure at" the defendant's shipyard. (Emphasis added.) This statement, however, does not preclude us from determining that he adopted Welch's conclusion that asbestos exposure was a "substantial contributing cause" of the decedent's lung cancer, in addition to his smoking. A substantial contributing cause is nevertheless still a "part" of the overall cause. Indeed, "the substantial factor standard is met if the employment materially or essentially contributes to bring about an injury ...." (Emphasis in original; internal quotation marks omitted.) Birnie v. Electric Boat Corp. , supra, 288 Conn. at 412, 953 A.2d 28. A "part" of the cause is, therefore, a material contribution.

As in Birnie v. Electric Boat Corp. , supra, 288 Conn. at 395 n.2, 953 A.2d 28, "we express no opinion as to what constitutes the proper causation standard, generally , under the Longshore Act." (Emphasis in original.) We note that the standard appears vague as a matter of federal law, but, in the present case, the administrative law judge has specifically applied the same standard used in the state forum. Our conclusion regarding whether the defendant should have been collaterally estopped from relitigating causation is, therefore, "limited to the facts of this particular case." Id. ; see also id., at 417-18, 953 A.2d 28 (declining to consider causation standard under Longshore Act because scope of contributing factor standard, as applied by federal administrative law judge in that case, was unclear, and we therefore could not "compare adequately the scope of the contributing factor and substantial factor standards"); Lafayette v. General Dynamics Corp. , supra, 255 Conn. at 781, 770 A.2d 1 (declining to address standard of causation under Longshore Act because issue was raised for first time at oral argument).

Indeed, the defendant stated that, in litigating the Longshore Act claims, it adopted a strategy-likely consistent with that of most other employers-of attempting to prove that the asbestos exposure played no role at all in the decedent's illness in order to rebut the § 20 (a) presumption. This would appear to be the same strategy employers would strive to use in the state forum.